IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JERRY BARNES**, *pro se* | * | |
| | * | |
| Petitioner | * | |
| | * | |
| v. | * | Crim. No. **PJM 06-0178** |
| | * | Civil No. **PJM 12-3474** |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Respondent | * | |

### MEMORANDUM OPINION

Jerry Barnes, *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence (Paper No. 57 & 58), a Motion in Response to Government's Default (Paper No. 64), and a Motion to Dismiss Judge from Case (Paper No. 72). Having considered the Motions and the Government's Opposition to same, the Court will **DENY** them.

### I.

### Introduction

On April 28, 2006, Barnes pled guilty to one count of possession with intent to distribute more than 5 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). The Presentence Report ("PSR") noted that Barnes was convicted in 1974 of robbery with a deadly weapon and in 1995 of assault with intent to disable, both in the Circuit Court for Prince George's County, Maryland. PSR at ¶¶32, 39. The PSR scored these two convictions as predicate crimes under the Career Offender provision of the Sentencing Guidelines, U.S.S.G. §4B1.1, and therefore computed his Criminal History Category as VI and Offense Level as 34. *Id.* at ¶¶22, 43.

At sentencing, the Court agreed with the PSR calculations, and then initially adjusted the Offense Level downward to 31 for acceptance of responsibility. Given Barnes's Criminal

1

History Category of VI, his custody range under the Guidelines was 188-235 months. The Court thereafter granted a 5-level downward departure under U.S.S.G. §5K1.1, resulting in an Offense Level 26 and a custody range of 120-150 months.

In weighing the 18 U.S.C. § 3553(a) factors, the Court observed that Barnes was "an active participant" in a "drug conspiracy, which was a major one" and that his criminal history was "pretty awful." Tr. 81:12-25. Ultimately, the Court chose to go below the advisory guidelines range, taking into account the three years in which Barnes had "been in effect serving time on the outside". *Id.* at 84:8-10. The Court gave Barnes "credit for those three years against the 120 months. That's what brings down the number from 120 to 84." *Id.* at 84:10-12. And that is what Barnes was given – 84 months imprisonment (and 5 years of supervised release).

Barnes appealed to the Fourth Circuit, arguing that neither the assault with intent to disable conviction nor his armed robbery conviction should have been considered predicate offenses to determine his Career Offender Status. The Fourth Circuit disagreed, finding that the assault with intent to disable conviction qualified as a Career Offender predicate. *United States v. Barnes*, 457 F. App'x 303, 305 (4th Cir. 2011). The Fourth Circuit also found that that there was "sufficient evidence that a portion of Barnes's sentence following his 1974 robbery conviction was served within fifteen years of the instant offense, thereby qualifying as a career offender predicate." *Id.* at 306.

After receiving two extensions, Barnes filed the present Motion to Vacate, Set Aside or Correct Sentence (Paper Nos. 57 & 58). He also filed a "Motion in Response to Government's Default" (Paper No. 64) because the Government had not yet responded to his Motion in a timely fashion. After the Court granted the Government's Motion for Extension of Time to File

2

Response to the Motion to Vacate (Paper No. 66), Barnes filed a Motion to Dismiss Judge from Case (Paper No. 72).

## II.

## Claims for Relief

In his Motion to Dismiss Judge from Case, Barnes argues that the Court should be disqualified from deciding the Motion to Vacate because the Court has been unable to give him an impartial ruling.

In his Motion to Vacate, Barnes makes three ineffective assistance of counsel claims: (1) Counsel was unaware the Government was seeking Career Offender status and should have sought a continuance; (2) Counsel should have investigated whether Barnes was actually innocent of the assault with intent to disable conviction; and (3) Counsel failed to inform Barnes that he was classified as a Career Offender. Barnes also objects to the admission of certain documents at his sentencing, which were introduced to prove the assault with intent to disable conviction.

In his reply to the Government's opposition to his Motion to Vacate Barnes raises an additional ineffective assistance of counsel argument, namely that counsel failed to present positive evidence of Barnes's character, specifically his work history.

By way of a separate Motion, Barnes argues that the Government "defaulted" by failing to respond within 60 days of the Court's Order directing the Government to file a response.

The Government has filed no response to the Motion to Dismiss Judge from Case or his request for a Default Judgment based on the Government's late-filed response.

As for Barnes's ineffective assistance claims, the Government responds that Barnes's attorney not only performed adequately but that any alleged failure would not have changed the

outcome of the proceedings. In fact, says the Government, defense counsel disputed that Barnes was a Career Offender in motions filed prior to the sentencing hearing as well as at the sentencing itself. Defense counsel also argued strenuously against the admission of documents establishing the predicate offenses at sentencing. The Government construes Barnes's argument regarding the admissibility of documents pertaining to his assault conviction as a misrepresentation of the record and therefore meritless.

### III.

### Motion to Dismiss Judge from Case

In his Motion to Dismiss Judge from Case, Barnes alleges that the Court is biased and unable to rule impartially on his Motion to Vacate.

The Court will construe his Motion as one pursuant to 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In particular, a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1). The critical question presented by this subsection "is not whether the judge is impartial in fact," but rather whether another "might reasonably question [the judge's] impartiality on the basis of all the circumstances." *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998).

Barnes alleges that the Court cannot be fair and impartial because: (1) The Court has a "personal vendetta" against anyone associated with Lester Fletcher; (2) The Court let AUSA Salem use "illegal documents" at sentencing; (3) The Court deprived Barnes of access to his entire sentencing "transcript" and docket sheet; and (4) As set forth in his reply, the Court

4

supposedly made inflammatory statements at sentencing. The Court answers these assertions seriatim.

As for Lester Fletcher, the principal malefactor in the drug conspiracy involving Barnes, although the Court also presided over Fletcher's case, "[a] judge's actions or experience in a case or related cases . . . do not constitute a basis to allege personal bias." *Sine v. Local No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 915 (4th Cir. 1989). The Court properly allowed AUSA Salem to introduce documents pertaining to Barnes's predicate convictions, as discussed at Part V, *infra*. Barnes, and more particularly his counsel, had whatever access to Court papers a criminal defendant is permitted to have. A free transcript of a sentencing proceeding, it may be noted, is not a convicted defendant's entitlement as of right. None of the inflammatory statements supposedly made by the Court appears in the record. For example, Barnes claims the Court stated "you probably [have] done some things and feel you got away with them . . . . In my mind, you probably were guilty of those charges too." The Court denies ever making such a statement or ever making such a statement to anyone in 29 years on the bench.

The Court finds that Barnes has failed to establish any reasonable basis as to why the Court's impartiality should be questioned, and his Motion to Dismiss Judge from Case will therefore be denied.

### IV.

### Ineffective Assistance of Counsel

#### A.

#### Motion to Vacate

A motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 "challeng[es] the validity of [a federal prisoner's] judgment and sentence." *In re Vial*, 115 F.3d

1192, 1194 (4th Cir. 1997). Because Barnes makes this challenge *pro se*, his motion is "not required to meet the same stringent standards" as attorney-filed pleadings. *Estate of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 328 (D. Md. 2012).

In a motion to vacate, a defendant may raise constitutional claims that *could* have been raised on direct appeal – but were not – only if he can show "cause" and "actual prejudice," *United States v. Frady*, 456 U.S. 152, 167–68 (1982), or "actual innocence." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (noting the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). A defendant can show cause by proving, among other things, "a denial of the effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 492–95 (4th Cir. 1999). However, "a collateral challenge may not do service for an appeal." *Frady*, 456 at 165.

B.

*Strickland* Standard

The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) governs ineffective assistance of counsel claims. A convicted defendant must show that "(1) his [counsel's] performance fell below an objective standard of reasonableness, and (2) that [the defendant] was prejudiced by the deficiency because it created a reasonable probability that but for counsel's errors, the result of the proceeding would have been different." *United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir. 1994). In an ineffective assistance of counsel claim, the defendant bears the burden of proof as to both prongs, each of which must be carried to obtain relief. *See Strickland*, 466 U.S. at 697 ( "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *see, e.g., Booth–El v. Nuth*, 288 F.3d 571, 583 (4th Cir. 2002)

6

(denying an ineffective assistance of counsel claim because the defendant could not demonstrate that counsel's conduct prejudiced him).

Under *Strickland*'s first prong, the defendant must show that trial counsel's assistance "fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 U.S. at 688. In other words, the performance of petitioner's counsel must have been outside "the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

To satisfy the second prong of *Strickland*, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To demonstrate prejudice at the sentencing stage, a defendant must show that, but for counsel's deficient performance, there was at least a reasonable probability of a different sentence. *Glover v. United States*, 531 U.S. 198, 203–04 (2001); *United States v. Soto*, 10 F. App'x 226, 228 (4th Cir. 2001).

All of Barnes's ineffective assistance of counsel claims fail under both prongs.

C.

Failure to Request Continuance Regarding Career Offender Status

Barnes contends that his attorney "openly admitted in court" that she was surprised that the Government was seeking Career Offender Status, and that she erred by not seeking a continuance in order to prepare for the hearing.

At the outset, the Court notes that the sentencing transcript shows no evidence of surprise by Barnes's attorney. To the contrary, counsel had clearly reviewed the Pre-Sentence Report ("PSR") and noted her objections prior to the November 2, 2010 sentencing hearing. In August 2010 she filed a request with the Court to review the criminal history documents collected by

U.S. Probation Office in support of the criminal history detailed in the PSR, which the Court approved (Paper Nos. 23 & 24). Moreover, in Defendant's Sentencing Memorandum filed by counsel on October 29, 2010, counsel argued that Barnes should not be classified as a Career Offender because neither the assault with intent to disable nor the robbery convictions qualified as predicate offenses (Paper No. 30). Counsel renewed these objections at the sentencing hearing. Moreover, counsel argued at sentencing that certain documents evidencing the robbery conviction should have been introduced by the Government prior to the sentencing hearing to provide Barnes with adequate notice. Tr. 14:16-22; 15:20-16:16. Whether or not defense counsel prevailed on these arguments is of no consequence. The issue here is – Did she fairly raise them? The answer is she did. Barnes's attorney's performance was clearly "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687.

Barnes has also failed to show that his attorney's (allegedly) "deficient performance prejudiced the defense," because even had the Court granted a continuance, there is no "reasonable probability" that prolonging the proceedings would have led to a different outcome. *See id.* Given his assault with intent to disable and robbery convictions, Barnes met the statutory requirements for Career Offender Status, such that even if the Court had granted a continuance, it would have reached the same decision as to Barnes's criminal history. Barnes has failed to demonstrate both that his attorney's performance was deficient or that he was in any way prejudiced by that deficiency.

D.

Failure to Request Continuance to Discover New Evidence

In his §2255 Motion, and again in his "Supplementary Memorandum of Law and Motion in Response to Government's Default" (Paper No. 64), Barnes argues his attorney should have

requested a continuance in order to investigate whether he was actually innocent of the assault with intent to disable offense. Barnes has submitted a letter from his sister, the victim of the assault, dated September 26, 2012, in which she claims that Barnes did not hit her but that she was instead attacked by Barnes's then-girlfriend. Barnes cites this letter as proof that he is actually innocent of the predicate offense and that his counsel should have requested a continuance to discover such evidence to invalidate the conviction.

But with the sole exception of convictions obtained in violation of the right to counsel, a defendant has no right to collaterally attack prior convictions used for sentence enhancement. *Custis v. United States*, 511 U.S. 485, 496 (1994). Only after a prior conviction is vacated by the court that rendered it may a petitioner "apply for reopening of any federal sentence enhanced by the state sentences." *Id.* at 497. Even then, "[v]acatur alone does not entitle a petitioner to habeas relief." *United States v. Pettiford*, 612 F.3d 270, 278 (4th Cir. 2010).

Accordingly, Barnes has not shown that his attorney's performance was deficient, nor is there any reason to suggest that requesting a continuance to discover new evidence would have changed the outcome of the Sentencing Hearing.

E.

Failure of Counsel to Inform Barnes about Career Offender Status

Barnes claims that his attorney failed to inform him that he could be classified as a Career Offender, and that he was prejudiced as a result. That claim is flatly contradicted by the record. As discussed *supra*, the record clearly indicates that Barnes's attorney knew the Government was seeking Career Offender status and so stated that in her objections months prior to the sentencing, as well as at the sentencing itself. Furthermore, Barnes's plea agreement put Barnes on notice "that there is no agreement as to his criminal history or criminal history category, and

that his criminal history could alter his offense level if he is a career offender . . . ." Plea Agrmt. ¶10. But even if Barnes himself was somehow unaware of this possibility, there is still no indication that any failure to discuss Career Offender Status with Barnes would have led to a different outcome. This argument is also without merit.

### F.

### Character Evidence

In his Reply, Barnes for the first time argues that his conviction should be vacated because his counsel failed to present positive evidence of his character at the Sentencing Hearing; in particular, that she failed to present a "character letter" that was sent to her from a former supervisor, Neil Wrabley, and that she failed to subpoena witnesses who would have testified on his behalf. He details his work experience, and argues that his counsel never gave the Court this information to consider.

The Court notes at the outset that Barnes may not raise new ineffective assistance of counsel arguments in this manner. Amendments (or even supplemental pleadings) in habeas cases are not permitted outside of the statute of limitations unless the amendment or supplement "relates back" to the original pleading, which means that it "arose out of the conduct, transaction or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15; *Mayle v. Felix*, 545 U.S. 644, 659 (2005). An amended habeas petition "does not relate back (and thereby escape [the Antiterrorism and Effective Death Penalty Act]'s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. Barnes's Reply was filed after the one-year time limit had passed, and raises an entirely new argument for relief. It does not "relate back" to his

original timely pleading, and is not therefore properly before the Court for consideration. But even if it were, Barnes's argument is without foundation.

The character evidence Barnes complains of was in fact properly put before the Court by his counsel. She submitted a thorough Sentencing Memorandum which set forth in detail Barnes's work experience at Prince George's County Department of Public Works, and attached a letter from his supervisor, Neal Wrabley, photographs of the equipment Barnes used, an email from a Mr. Wrabley commending Barnes's performance, a performance evaluation, and a commendation.[1] At the sentencing, a supervisor from the Department of Public Works and Transportation actually testified about Barnes's work ethic, noting that he would hire Barnes again. Although another supervisor was unable to testify because he had left to go to an appointment, there is no indication that he failed to testify for any reason other than his own scheduling conflict. If anything, the record discloses a highly effective assistance of counsel performance by defense counsel in this regard.

V.

Objection to Document Establishing Predicate Offense

Barnes objects to the admission of a document introduced at the sentencing to prove the assault with intent to disable conviction. He argues that because the documentation of that conviction was not certified ("was missing a seal"), it should not have been admitted as evidence against him. He also seems to argue that he in fact was not convicted of the predicate offense. He points to a letter, attached as Exhibit 3 to his §2255 Motion, from the Maryland Parole Commission stating that they were unable to locate the actual commitment order from his files.

---

[1] This memorandum and the attached documents have been filed under seal of court. Paper Nos. 26, 27, 28.

He argues that he was already serving a 4-year prison term at the time of the assault conviction.[2]

With respect to the assault with intent to disable conviction, the Government submitted Exhibit 3 to the Sentencing Hearing, previously attached as Attachment A to their Sentencing Memorandum. U.S. Probation Officer Milton Gross testified that the document was a "certified copy of the assault with intent to disable . . . conviction" obtained from Prince George's County Circuit Court. Tr. 36:23-37:3. Gross testified on cross-examination that one of his officers obtained a "true test copy" of Exhibit 3. By contrast, the documents evidencing the *robbery* conviction (Exhibit 1) did not have a stamp or seal. *Id.* at 41:12-42:2. *See also* Tr. 40:18-21 (Q: "Exhibit 1 does not have either the stamp or the stamp or the seal, is that right?" A: "That's correct.").[3]

This ground is procedurally barred because Barnes did not raise it on direct appeal, and because it is not a constitutional claim. *See Frady*, 456 U.S. at 167–68. The Court sees no indication that Barnes's failure to raise this claim on direct appeal resulted from ineffective assistance of counsel. *See, e.g., United States v. Mikalajunas*, 186 F.3d 490, 492–95 (4th Cir. 1999).

Even if Barnes could proceed with this argument, it lacks merit. As the Fourth Circuit has recently stated, "[i]n resolving a dispute regarding the PSR, the court may consider information that 'has sufficient indicia of reliability to support its probable accuracy.' U.S.S.G. § 6A1.3(a). The party objecting to information in a PSR has an 'affirmative duty' to show that the

---

[2] The Court notes that Barnes may be referring to a separate conviction for possession of cocaine, described at Paragraph 37 of the PSR, for which he was charged on December 21, 1993. Barnes was sentenced on December 15, 1995 to three years in jail for that offense, with credit for time served. PSR at ¶37. Barnes was charged with committing the assault offense on September 3, 1995, prior to being sentenced for the offense noted at Para. 37 of the PSR. PSR at ¶39.

[3] In opposition, the Government argues that Gross testified that the documents pertaining to Barnes's prior assault with intent to disable conviction did not have a seal or stamp on them. Govt. Mem. at 9. But the Government then quotes the excerpt of the transcript in which Gross was asked about the documents in support of the *robbery* conviction. Gross testified that Exhibit 3, by contrast, was a "certified copy" and a "true test copy".

information is incorrect." *United States v. Terry,* 916 F.2d 157, 162 (4th Cir. 1990); *see also United States v. McDowell*, No. 13-4370, 2014 WL 960256 at *3 (4th Cir. Mar. 11, 2014) (finding that a National Crime Information Center report was sufficiently reliable to attribute a prior conviction to defendant).

The Court properly found "that the documents that [the Court] has before it are reliable. Among the other things, we have the sworn statement of the supervisor of the Probation Pre-trial Services Report saying that he personally retrieved this from the file of the defendant at the Parole Commission." Tr. 44:4-9. Although the dispute at sentencing was over the admissibility of the documents evidencing the *robbery* conviction, even if the assault with intent to disable conviction had not been certified (which it was), the Court clearly found that certification was not required "when you've got the affirmation under oath by the representative of probation here that this was from the defendant's file." *Id.* at 44:13-18. This Court appropriately found, therefore, that the Barnes had not met his burden of showing the information in the PSR was incorrect, *Terry*, 916 F.2d at 162, and that the documents establishing the assault conviction had "sufficient indicia of reliability", U.S.S.G. § 6A1.3(a). Any ineffective assistance of counsel argument here is entirely misplaced.

## VI.

### Government's Default

Barnes argues that the Government "defaulted" by failing to respond within 60 days of the Court's January 25, 2013 Order, as the Court directed in the Order. However, the Court granted the Government's Motion for Extension of Time to Respond nunc pro tunc on May 3, 2013. A Default Judgment against the Federal Government in a *civil* case will not be granted unless the Petitioner is clearly entitled to the relief sought. *Cf.* Fed. R. Civ. P. 55(e). A fortiori it

is unavailable where a defendant in a criminal case seeks to have a court vacate his conviction because the Government was late in filing a written response to a Motion filed by defendant. The Government's delay was expressly excused and does not constitute error of any kind.[4]

## VII.

### Certificate of Appealability

Rule 11(a) of the Rules Governing § 2255 cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court has considered the record and finds that Barnes has not made the requisite showing here.

## VIII.

### Conclusion

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Paper No. 57 & 58), Motion in Response to Government's Default (Paper No. 64), and Motion to Disqualify Judge (Paper No. 72) are **DENIED**.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 7, 2014

---

[4] Barnes himself sought and received more than one extension to put his arguments before the Court. It was hardly unfair to give the Government an appropriate extension as well.

14